CLERK'S OFFICE U.S. DISTRICT. COURT
AT CHARLOTTESVILLE, VA
FILED

JUN 28 2023

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

UNITED STATES OF AMERICA          )
                                  )    Criminal No. 3:23CR 00011
v.                                )
                                  )    In Violation of:
SCOTT HOWARD JENKINS,             )
RICK TARIQ RAHIM,                 )    18 U.S.C. § 371
FREDRIC GUMBINNER, and            )    *Conspiracy*
JAMES METCALF,                    )    18 U.S.C. §§ 1341, 1343 & 1346
                                  )    *Honest Services Mail and Wire Fraud*
              Defendants.         )    18 U.S.C. § 666(a)(1)(B)
                                  )    *Bribery Concerning Programs Receiving*
                                  )    *Federal Funds*
                                  )    18 U.S.C. § 666(a)(2)
                                  )    *Bribery Concerning Programs Receiving*
                                  )    *Federal Funds*
                                  )    18 U.S.C. § 2
                                  )    *Aiding and Abetting*
                                  )

## INDICTMENT

The Grand Jury charges that:

At all times relevant to this Indictment:

### INTRODUCTION

1.    The people of Culpeper County, Virginia elected SCOTT HOWARD JENKINS to

be their Sheriff. As Sheriff, JENKINS had authority to appoint Auxiliary Deputy Sheriffs –

volunteer sworn law-enforcement officers – to supplement the Sheriff's Office's law-enforcement

capabilities. JENKINS had a duty to exercise that authority for the benefit of Culpeper County

and its residents. Instead, JENKINS used the powers of his office to enrich himself and to secure

funds for his re-election, accepting bribes totaling at least $72,500 from RICK TARIQ RAHIM,

1

FREDRIC GUMBINNER, JAMES METCALF, and others in exchange for appointments as Auxiliary Deputy Sheriffs and other official acts.

## GENERAL ALLEGATIONS

2.      JENKINS was elected Sheriff of Culpeper County, Virginia in 2011 and took office on or about January 1, 2012.  He was re-elected in 2015 and 2019.  As Sheriff, JENKINS led the Culpeper County Sheriff's Office, which was the primary law-enforcement agency serving Culpeper County.  JENKINS was an agent of Culpeper County and of the Culpeper County Sheriff's Office.  He owed a duty of honest services to Culpeper County and its residents.

3.      "Scott Jenkins for Sheriff" was a candidate campaign committee formed for the purpose of receiving contributions and making expenditures for or on behalf of JENKINS in connection with his nomination or election for public office.  Virginia law required Scott Jenkins for Sheriff to file periodic reports with the Virginia Department of Elections disclosing, for each contributor who contributed more than $100 during an election cycle, the name, address, occupation (for individuals) or type of business (for businesses), date received, and amount of any cash or in-kind contribution, among other information.  JENKINS controlled and directed the activities and financial affairs of Scott Jenkins for Sheriff.

4.      The Culpeper County Sheriff's Office was an agency of Culpeper County, which in turn was a local government and a political subdivision of the Commonwealth of Virginia.  At all times relevant to this Indictment, including each of the fiscal years ending 2019, 2020, 2021, 2022, and 2023, both Culpeper County and the Culpeper County Sheriff's Office received benefits exceeding $10,000 per year under federal programs involving grants, contracts, subsidies, loans,

guarantees, insurance, and other forms of federal assistance.

5.      Culpeper County, by ordinance, authorized the Sheriff's Office to establish an Auxiliary Deputy Sheriff force and delegated to the Sheriff authority to appoint Auxiliary Deputy Sheriffs.

6.      The Sheriff's Office issued General Order 1-15, approved by JENKINS, effective January 1, 2020, governing Auxiliary Deputy Sheriffs and civilian volunteers. General Order 1-15 stated that an Auxiliary Deputy Sheriff "generally performs the same duties and has law-enforcement powers equivalent to those of paid deputy [*sic*]." It further set forth selection, training, and service requirements for Auxiliary Deputy Sheriffs.

7.      To appoint an individual as an Auxiliary Deputy Sheriff, JENKINS prepared and signed a court order titled "Appointment of Auxiliary Deputy Sheriff" certifying that he made the appointment pursuant to the applicable provision of the Virginia Code. The Appointment Order was filed in the Culpeper County Circuit Court and signed by the Circuit Judge, if approved. The appointee then swore and signed the oath of office before the Circuit Court Clerk to complete the appointment. The appointment expired at the end of the Sheriff's term in office. To maintain status as an Auxiliary Deputy Sheriff, the appointee would have to be re-appointed and re-sworn during the subsequent term.

8.      Individuals who were appointed Auxiliary Deputy Sheriffs in Culpeper County generally received a badge that identified them as a "Deputy Sheriff" in the "Culpeper County Sheriff's Office." They also received a Sheriff's Office identification card stating, "THIS IS TO CERTIFY THAT [Name] WHOSE IDENTIFICATION AND SIGNATURE APPEAR HEREIN

IS A DULY SWORN AND QUALIFIED DEPUTY SHERIFF VESTED WITH THE POWERS AND AUTHORIZED TO PERFORM ALL DUTIES OF THAT OFFICE," followed by the Sheriff's signature. The card identified the bearer as an Auxiliary only on the back.

9.     RAHIM was a businessman residing in Great Falls, Virginia. RAHIM owned BV Management LLC and Food Truck Company LLC, among other businesses. Under Virginia law, RAHIM was disqualified from his right to ship, transport, possess, or receive firearms.

10.     GUMBINNER was a businessman and attorney residing in Fairfax, Virginia.

11.     METCALF was a businessman residing in Manassas, Virginia. He owned Yona Systems Group, a business headquartered in McLean, Virginia.

12.     Individual 1 was a businessperson residing in Prince William County, Virginia.

13.     Individual 2 was a businessperson residing in Fairfax County, Virginia. Individual 2 owned Company 1, a business headquartered in Fairfax County, Virginia.

14.     Individual 3 was a businessperson residing in Fairfax County, Virginia.

15.     Individual 4 was a businessperson residing in Montgomery County, Maryland.

16.     Individual 5 was a businessperson residing in Fairfax County, Virginia.

17.     UC-1 was an undercover agent with the Federal Bureau of Investigation.

18.     UC-2 was an undercover agent with the Federal Bureau of Investigation.

19.     Deputy 1 was a Deputy Sheriff employed by the Culpeper County Sheriff's Office. Deputy 1 was responsible for helping to process paperwork related to the appointment of the Auxiliary Deputy Sheriffs.

20.     Deputy 2 was a Deputy Sheriff employed by the Culpeper County Sheriff's Office.

Deputy 2 was responsible for helping to process paperwork related to the appointment of the Auxiliary Deputy Sheriffs before Deputy 1 assumed that role.

21.     Attorney 1 was the Commonwealth's Attorney for Culpeper County.

22.     Attorney 2 was an Assistant Commonwealth's Attorney for Culpeper County.

23.     Sheriff 1 previously served as Sheriff of another county in Virginia.

### COUNT ONE
Conspiracy
(18 U.S.C. § 371)

24.     Paragraphs 1 to 23 of the Indictment are realleged and incorporated by reference as though fully set forth herein.

25.     Beginning no later than in or around April 2019 and continuing until in or around January 2023, in the Western District of Virginia and elsewhere, the defendants, SCOTT HOWARD JENKINS, RICK TARIQ RAHIM, FREDRIC GUMBINNER, and JAMES METCALF, Individual 1, Individual 2, Individual 3, and Individual 4, and others known and unknown, did knowingly and unlawfully combine, conspire, confederate, and agree together and with each other, to commit the following offenses against the United States:

a.      for JENKINS, being an agent of Culpeper County and the Culpeper County Sheriff's Office, to corruptly solicit, demand, accept, and agree to accept for his own benefit, things of value from RAHIM, GUMBINNER, METCALF, Individual 1, Individual 2, Individual 3, and Individual 4, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of Culpeper County and the Culpeper County Sheriff's Office, involving anything of value of $5,000 or more, that is, as to RAHIM, GUMBINNER, METCALF,

5

Individual 1, Individual 2, Individual 3, and Individual 4, appointments as Auxiliary Deputy Sheriffs and, additionally, as to RAHIM, a petition to restore RAHIM's firearms rights, in violation of Title 18, United States Code, Section 666(a)(1)(B);

b.      for RAHIM, GUMBINNER, METCALF, Individual 1, Individual 2, Individual 3, and Individual 4, to corruptly give, offer, and agree to give things of value to JENKINS, an agent of Culpeper County and the Culpeper County Sheriff's Office, with intent to influence and reward JENKINS in connection with any business, transaction, and series of transactions of Culpeper County and the Culpeper County Sheriff's Office involving anything of value of $5,000 or more, that is, as to RAHIM, GUMBINNER, METCALF, Individual 1, Individual 2, Individual 3, and Individual 4, appointments as Auxiliary Deputy Sheriffs and, additionally, as to RAHIM, a petition to restore RAHIM's firearms rights, in violation of Title 18, United States Code, Section 666(a)(2);

c.      for JENKINS, RAHIM, GUMBINNER, METCALF, Individual 1, Individual 2, Individual 3, and Individual 4, to devise and intend to devise a scheme and artifice to defraud and deprive Culpeper County, the Culpeper County Sheriff's Office, and the citizens of Culpeper County of their intangible right to the honest services of JENKINS, through bribery, and for the purpose of executing such scheme, to knowingly cause a matter to be delivered by mail according to the direction thereon and at the place at which it is directed to be delivered by the person to whom it is addressed, and to cause wire communications to be transmitted in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 1341, 1343, and 1346.

**Purpose of the Conspiracy**

26.      It was a purpose of the conspiracy for JENKINS to unlawfully benefit and enrich

himself and others and to fund his re-election campaigns through bribery.

27.     It was a further purpose of the conspiracy for RAHIM, GUMBINNER, METCALF, Individual 1, Individual 2, Individual 3, and Individual 4 to obtain and maintain status as Auxiliary Deputy Sheriffs, Sheriff's Office badges, and Sheriff's Office identification cards in exchange for bribes.

28.     It was a further purpose of the conspiracy for RAHIM to obtain approval for his petition to restore his firearms rights filed in Culpeper County Circuit Court, for which he did not meet the statutory requirement of residency in Culpeper County, in exchange for bribes.

29.     It was a further purpose of the conspiracy to secure JENKINS's re-election so that he could continue to appoint RAHIM, GUMBINNER, METCALF, Individual 1, Individual 2, Individual 3, and Individual 4, and others known and unknown as Auxiliary Deputy Sheriffs.

30.     It was a further purpose of the conspiracy to conceal from Culpeper County, the Culpeper County Sheriff's Office, and the citizens of Culpeper County, JENKINS's abuse of his official position to perform official acts benefitting RAHIM, GUMBINNER, METCALF, Individual 1, Individual 2, Individual 3, and Individual 4, and others known and unknown, including appointment as Auxiliary Deputy Sheriffs, in exchange for bribes.

### Manner and Means of the Conspiracy

The conspiracy used the following manner and means, among others:

31.     JENKINS solicited, accepted, and agreed to accept things of value, including cash bribes and bribes in the form of campaign contributions, from RAHIM, GUMBINNER, METCALF, Individual 1, Individual 2, Individual 3, Individual 4, and others known and unknown, in exchange for JENKINS's agreement to appoint them as Auxiliary Deputy Sheriffs and issue

them Sheriff's Office badges and identification cards, and, in addition as to RAHIM, to pressure and advise other public officials to process and approve RAHIM's petition to restore his firearms rights.

32.     RAHIM, GUMBINNER, METCALF, Individual 1, Individual 2, Individual 3, and Individual 4, and others known and unknown, gave, offered, and agreed to give, things of value, including cash bribes and bribes in the form of campaign contributions, in return for JENKINS's agreement to appoint them as Auxiliary Deputy Sheriffs and issue them Sheriff's Office badges and identification cards, and, in addition as to RAHIM, to pressure and advise other public officials to process and approve RAHIM's petition to restore his firearms rights.

33.     JENKINS told or caused others to tell RAHIM, GUMBINNER, METCALF, Individual 1, Individual 2, Individual 3, and Individual 4, and others known and unknown, that status as an Auxiliary Deputy Sheriff, along with the badge and identification card issued by the Sheriff's Office, authorized them to carry a concealed firearm in any state without obtaining a concealed carry permit.

34.     JENKINS failed to ensure that the individuals who were appointed as Auxiliary Deputy Sheriffs met the training requirements prescribed by his own General Order 1-15.

35.     JENKINS concealed the scheme by, among other things:

        a.      encouraging the payment of bribes in cash or through other individuals rather than directly to him; and

        b.      disguising bribe payments as purchases of firearms and creating false documentation of the purported purchases.

## Overt Acts in Furtherance of the Conspiracy

36.    In furtherance of the conspiracy and to effect its objects, in the Western District of Virginia and elsewhere, RAHIM, GUMBINNER, METCALF, Individual 1, Individual 2, Individual 3, Individual 4, and others known and unknown committed the following overt acts, among others:

*Bribery Involving RAHIM*

37.    In 2019, JENKINS was running for re-election in a contested race.  On or about June 27, 2019, JENKINS reached out to Individual 1 via text message, stating, in relevant part, "Just touching base on campaign we'll be kicking things off in two weeks and I'll have a finance report due soon too so looking to build the war chest and get donations in soon."  On or about July 24, 2019, JENKINS again texted Individual 1, stating, "Looks like my opponent is hooking up with Democrats to run an attack campaign soon so we're starting to spend.  Let me know if you have any luck with anyone. Thanks so much again for your help."

38.    On or about July 24, 2019, Individual 1 responded, "Hey bubba.  Working on it.  I think I got a big fish for you. Call me in am."  On or about July 29, 2019, Individual 1 texted JENKINS a photograph of RAHIM's driver's license and explained that RAHIM had "[a] little baggage but almost 30 years ago" and RAHIM wanted JENKINS's help in getting his firearms rights restored.  Individual 1 further noted, "He is very wealthy and helps a lot of causes."  JENKINS responded with three "thumbs up" emojis.

39.    On or about July 31, 2019, JENKINS, RAHIM, and Individual 1 met at the Sheriff's Office.  At approximately 11:44 am, Individual 1 texted JENKINS, "We r here."  JENKINS responded, "Hang on 5."  Individual 1 responded, via Apple iMessage, "Take your time.  No

hurry." At the meeting, JENKINS, RAHIM, and Individual 1 discussed RAHIM's desire to get his firearms rights restored and become an Auxiliary Deputy Sheriff, among other items. They further discussed things of value that RAHIM could provide to JENKINS.

40.     JENKINS and RAHIM agreed that RAHIM would provide things of value to JENKINS in return for JENKINS's assistance with getting RAHIM's firearms rights restored and promise to appoint him as an Auxiliary Deputy Sheriff.

41.     On or about September 5, 2019, JENKINS, RAHIM, and Individual 1 met for lunch.

42.     On or about September 9, 2019, $6,000 in cash was deposited into Financial Institution 1 account ending -712, a checking account titled jointly in the name of JENKINS and his spouse.

43.     On or about September 19, 2019, RAHIM's company, BV Management LLC, wrote a check in the amount of $17,500, payable to "Scott Jenkins," with a memo line, "Loan Proceeds." The same day, Individual 5, an associate of RAHIM, wrote a check in the amount of $17,500, payable to "Scott Jenkins," with a memo line referencing "loan."

44.     On or about January 5, 2022, JENKINS repaid the loan to Individual 5. As of January 15, 2023, JENKINS had not repaid the "loan" to RAHIM.

45.     On or about January 3, 2020, January 6, 2021, January 19, 2022, and January 18, 2023, JENKINS filed Statements of Economic Interests with the Virginia Conflict of Interest and Ethics Advisory Council representing that neither he nor any member of his immediate family owed more than $5,000 to any one creditor.

10

46.     In its campaign finance reports filed with the Virginia Department of Elections, Scott Jenkins for Sheriff did not report receiving any contributions from RAHIM or any business associated with him.

*JENKINS Performs Official Acts Benefitting RAHIM*

47.     Virginia law required a Virginia resident who wished to restore their firearms rights to petition the circuit court in the jurisdiction in which they resided.  A copy of the petition was required to be mailed or delivered to the Commonwealth's Attorney, who was entitled to respond and represent the interests of the Commonwealth.  The Circuit Court Judge would then grant or deny the petition.

48.     On or about November 14, 2019, JENKINS accompanied RAHIM to file his petition for restoration of firearms rights in the Culpeper County Circuit Court.  The petition, signed by RAHIM's attorney, stated, among other things, that, "The Petitioner is a resident of Culpeper County" and "In July 2019 the Petitioner was interviewed by the Culpeper Sheriff's Office and received a positive recommendation from that Department in support of this request."

49.     As JENKINS well knew, RAHIM did not reside in Culpeper County.  In or around September 2019, JENKINS arranged for RAHIM to enter a purported lease agreement for a rural property in Culpeper County (the "Culpeper Property").  RAHIM did not occupy the Culpeper Property and instead continued to reside in Fairfax County, Virginia.

50.     On or about March 16, 2020, in response to the Covid-19 pandemic, the Supreme Court of Virginia declared a judicial emergency suspending all non-essential, non-emergency court proceedings in all circuit and district courts. JENKINS agreed to and did pressure and advise the Circuit Court Judge and officials in the Commonwealth's Attorney's office to process and

11

approve RAHIM's petition notwithstanding the judicial emergency and knowing that the petition contained false information regarding RAHIM's residency.

51.     In or about April 2020, Attorney 2 reviewed RAHIM's file and noticed discrepancies relating to RAHIM's address and residency. On or about April 27, 2020, Attorney 2 wrote a memorandum to Attorney 1 explaining those discrepancies.

52.     On or about July 4, 2020, JENKINS texted RAHIM that he was meeting with the Circuit Court Judge and would inquire about "working in a civil matter with all the criminal stuff." RAHIM responded, "Maybe take the file ready for his signature during the meeting…" JENKINS responded, "Yep!!  I went on Thursday hoping I'd have it done for you already but he had judges meeting with him all day slapping backs and bs."

53.     On or about July 7, 2020, JENKINS texted RAHIM regarding his petition, "New judge hasn't done any that just sign off and weren't on court docket.  Wants to talk to [Attorney 1] about it for now and for future procedures.  Good thing is that he didn't seem too concerned about sliding one in during the judicial emergency period.  I'm headed over to catch [Attorney 1]."

54.     On or about July 10, 2020, Individual 1 texted JENKINS, "Hey any luck with the new judge helping you on Rick?"  JENKINS replied, "Talked to Rick earlier.  We follow up on Monday to see about a day for it to be scheduled on docket as a favor during this judicial emergency."

55.     On or about July 15, 2020, JENKINS texted RAHIM, in relevant part, "Just talked [*sic*] the assistant [Attorney 2] directly.  Doesn't really have any question other than residency like I'd said.  He's going to check with [Attorney 1] during court recess period to see what can be done

12

when. And see if he can do it without hearing preferably just as [Attorney 1] had promised." RAHIM responded, "Sounds kinda like if you win [Attorney 2] over, [Attorney 1] will do it." JENKINS replied, "Yes I believe you're correct. He's on it. I buttered him up a bit. Right now I'm leaving their building and he's still there looking to bend [Attorney 1's] ear to see about sign off without hearing before we do anything."

56.      Around this time, JENKINS told Attorney 2 that RAHIM had leased the Culpeper Property, in support of RAHIM's petition.

57.      On or about July 17, 2020, JENKINS texted RAHIM to explain that, because the Commonwealth Attorney's office had raised concerns about his residency, he would have to appear in court.

58.      On or about July 27, 2020, JENKINS texted RAHIM regarding a call scheduled between RAHIM and RAHIM's attorney: "I know you have your call and if comes up or asked it's 70 acres. 50 open with rolling hills of hay fields and the rest in hardwoods. Old white farmhouse and barn is used as part of the annual Halloween fundraiser event for Sheriff Christmas program. Plenty room to run a Sherp etc. And for an RV and cars etc." RAHIM responded, "Haha. You worry too much. But always good to be over prepared." JENKINS replied, "I just want this thing done! ASAP."

59.      On or about August 11, 2020, RAHIM texted JENKINS to express frustration that his attorney was seeking to schedule a hearing on his petition in September. RAHIM stated, "I was hoping you could pull strings and just get it on this week...." JENKINS responded that he would "personally go to the judge I'm [*sic*] the morning soon as he arrives in parking lot. You

13

have my word I'm going to either get an actual favor finally from them or I'll be in the doghouse."

60.     On or about August 13, 2020, RAHIM's attorney filed a praecipe in Culpeper County Circuit Court asking the Clerk of Court to schedule a hearing on RAHIM's petition for September 22, 2020.

61.     On or about August 13, 2020, JENKINS called the Circuit Court Judge and asked him to hear RAHIM's petition the following day, rather than on September 22, 2020.  The Circuit Court Judge agreed.  On or about August 14, 2020, the Circuit Court Judge held a hearing on RAHIM's petition. JENKINS was not present.  At the hearing, RAHIM falsely stated under oath that he resided in Culpeper County.  The same day, the Circuit Court Judge granted RAHIM's petition for restoration of firearms rights.

62.     On or about August 17, 2020, the Culpeper County Circuit Court Clerk's Office mailed a copy of the Order granting RAHIM's petition for restoration of firearms rights to the Virginia State Police via the United States Postal Service.

63.     On or about August 17, 2020, RAHIM filed an application for a concealed handgun permit with the Culpeper County Clerk's Office.  In the application, he falsely represented that he was a resident of Culpeper County and again listed the Culpeper Property as his address.

64.     While RAHIM's application was pending, JENKINS repeatedly directed Sheriff's Deputies to go to the Clerk's Office to pressure Clerk's Office employees to process the application.   On or about September 2, 2020, the Circuit Court Judge granted RAHIM's application.

65.     From in or around September 2020 to in or around May 2021, Individual 1

14

repeatedly asked JENKINS about getting RAHIM sworn in as an Auxiliary Deputy Sheriff. In or around October 2020, JENKINS issued RAHIM a Sheriff's Office identification card identifying him as a "Member of this Office" occupying the position of "Helicopter Pilot."

66.     On or about May 18, 2021, JENKINS signed an Appointment Order certifying that he had appointed RAHIM as an Auxiliary Deputy Sheriff. On or about May 27, 2021, RAHIM was sworn in and was issued a badge and Sheriff's Office identification card. The Sheriff's Office subsequently issued RAHIM a firearm and magazines.

67.     On or about August 25, 2022, JENKINS and Individual 1 discussed an incident in which RAHIM was speeding in an area not under JENKINS's jurisdiction. JENKINS stated, "It's like you have a debit card or a credit card or something like that, whatever. In Rick's mind, he's one of these people that I think he thinks that, ok, you know, I put this much on the card, I burned through that, used it all up, but somehow like a child he thinks that there's still some debt or some credit there that'll always be there and be worth like a million bucks and, you know, things like the other day, it's like oh, well, I've got credit on my account, I can get out of this. Well, dummy, the account is with me, not with them."

68.     On or about December 28, 2022, JENKINS and Individual 1 discussed RAHIM. JENKINS stated, "You know, okay, so you supported me and helped me. Okay, that's fine. You did and I am, I appreciate what support you've given me, but you didn't do it for nothing. You got a . . . a clean slate to carry a, not only carry a gun, we followed it up with swearing you in. Name another sheriff in the whole state of Virginia that would do that. And I don't think he realizes on the scale of things, does he think he could go anywhere and someone not say, well, you

15

know you'd have to pony up about three times what you did just to even consider, you know, doing something like that."

*Bribery Involving GUMBINNER*

69.     GUMBINNER was a business associate of RAHIM.  In or around April 2019, GUMBINNER and RAHIM were negotiating a business deal.  GUMBINNER asked whether RAHIM could arrange for GUMBINNER to become an Auxiliary Deputy Sheriff.  RAHIM and GUMBINNER agreed that RAHIM would facilitate getting GUMBINNER sworn as an Auxiliary Deputy Sheriff in Culpeper County in exchange for a payment of $20,000 to JENKINS.

70.     To do so, GUMBINNER made a payment to RAHIM's unrelated business, Food Truck Company LLC.  On or about October 2, 2019, check number 1169, in the amount of $20,000, drawn on GUMBINNER's Financial Institution 3 account ending -527, dated October 1, 2019, and made payable to "Food Truck Company LLC" was transacted in Great Falls, Virginia. On the memo line, the check falsely noted, "LLC Investment."

71.     On or about October 3, 2019, Individual 1 texted JENKINS, "How was your meeting with Rick ? Was he ok ? Or did he try to wheel n deal."  JENKINS responded, "Great. No he was great."  Individual 1 texted, "I heard another 21k.  Awesome.  I'm working on more." JENKINS responded, "It was good. Wish you could have made it.  Talked a lot about ideas and he even suggested a few things I'm trying to do on campaign."  Individual 1 responded, "Nice." JENKINS replied, "Yes. Amazing!"

72.     On or about December 23, 2019, RAHIM texted Individual 1 and GUMBINNER, "[Individual 1], Fred is the close friend who helped me provide all the recent support for our great Sheriff…  As we discussed, I'm asking [Individual 1] to get your paperwork started in becoming

an Auxiliary in Culpeper. Our goal would be to have Fred possibly sworn in this coming January.

Thanks to you both for your friendship!" Individual 1 responded, "Consider it done."

73.    In or around January and February 2020, Individual 1 sent JENKINS several text

messages about setting a date for GUMBINNER to be sworn in as an Auxiliary Deputy Sheriff

and sent a photograph of GUMBINNER's driver's license to JENKINS via text message.

74.    On or about February 26, 2020, Individual 1 texted JENKINS:

*Rick giving me crap about Fred not getting sworn yet after putting up all that $$.
He gave me a ton of crap.  You had told me yes on him over a month ago.  Rich
[sic] said he is meeting him on a bus thing tomorrow and feels he is gonna look
bad.  I sent you his OL over a month ago and you said yes n I passed it on.  I
understand but Rick is aggravated and does not wanna look bad.  What you want
me to tell him.*

75.    Approximately eight minutes later, Individual 1 texted JENKINS:

*FYI, Rick just sent this to me.  Help me out here.  What should I tell him:*

*You don't understand the world I play in.  When we shake hands, it's my oath to
the guy.  I have to give him back $20k now and apologize for being a liar.  I told
him it was a done deal.  I look ridiculous now.*

76.    Individual 1 also texted JENKINS:

*Another text from Rick*

*We've had his $20k for 6+ months, [Individual 1].  He's gotten nothing.  He makes
me millions of dollars.  I have to maintain credibility.  That's my world.  I have to
give the money back.  Or I have to set a date for him.  I was sure you had at least
put everything through by now and all we needed was to get him sworn.*

77.    Approximately an hour later, JENKINS initiated a telephone call with Individual 1

and the two spoke for nearly 12 minutes. Immediately thereafter, Individual 1 called RAHIM and

the two spoke for approximately 4 minutes. Individual 1 then texted JENKINS, "Rick good

now/happy. I told him next week mid week to get back worth [sic] me with date."

17

78.     Immediately thereafter, Individual 1 sent GUMBINNER's driver's license to Deputy 2 via Apple iMessage, followed by an Apple iMessage stating, in relevant part: "Sheriff wants to fast track Fred. Told me to have him come mid week next week to get sworn."

79.     On or about March 2, 2020, JENKINS signed an Appointment Order certifying that he had appointed GUMBINNER as an Auxiliary Deputy Sheriff. On or about March 6, 2020, GUMBINNER was sworn in and was issued a badge and Sheriff's Office identification card.

80.     In its campaign finance reports filed with the Virginia Department of Elections, Scott Jenkins for Sheriff did not report receiving any donations from GUMBINNER.

*Bribery Involving METCALF*

81.     Beginning no later than in or around September 2019, METCALF and Individual 1 discussed obtaining a Sheriff's Office badge for METCALF. On or about September 11, 2019, METCALF emailed Individual 1, stating, "I am ready to pop a little cash on somebody and get a badge brother will talk about that at lunch."

82.     In or around late 2021 to early 2022, JENKINS reached out to Individual 1 about building JENKINS's "war chest" for his 2023 re-election campaign. JENKINS and Individual 1 agreed that Individual 1 would recruit individuals to make payments to JENKINS, and JENKINS would appoint those individuals as Auxiliary Deputy Sheriffs in exchange for the payments.

83.     In or around August 2022, Individual 1 contacted METCALF and told him that he could become an Auxiliary Deputy Sheriff in Culpeper County in exchange for making a $5,000 contribution to JENKINS's reelection campaign. METCALF agreed.

84.     On or about August 22, 2022, Individual 1 texted a photograph of METCALF's driver's license to Deputy 1.

18

85.     On or about September 6, 2022, JENKINS signed an Appointment Order certifying that he had appointed METCALF as an Auxiliary Deputy Sheriff.  On or about September 7, 2022, METCALF traveled to Culpeper, where he had lunch with JENKINS and Individual 1.  After lunch, METCALF handed JENKINS a white envelope containing a $5,000 check from his company, Yona Systems Group, made payable to Scott Jenkins for Sheriff.  METCALF and Individual 1 then went to the Culpeper County Circuit Court Clerk's Office, where METCALF was sworn in as an Auxiliary Deputy Sheriff.

86.     As METCALF and Individual 1 drove from the Clerk's Office to the Sheriff's Office, METCALF stated that he could recruit additional "pay-to-play" guys to make donations to the Sheriff in exchange for becoming Auxiliary Deputy Sheriffs.  METCALF stated: "Look, I, you heard me say it.  I respect what his, I understand what the engine is, I understand how this works.  You don't just get money 'cause you clap your hands.  You remember the whole thing with [Sheriff 1], oh Sheriff's not going to do any of this, yeah right, why the f*** they going to give money?  Well I just like the Sheriff, here's ten grand.  Nah, don't work like that.  It don't work like that."

87.     At the Sheriff's Office, JENKINS, METCALF, and Individual 1 met in a conference room.  JENKINS gave METCALF a Sheriff's Office badge.  When METCALF stepped out of the room, Individual 1 told JENKINS, "He mentioned, on the way over, he said he's got these other guys, they're $10,000 guys and you'll never hear from them."  JENKINS responded, "Sounds good to me."  JENKINS then suggested that if "one of these guys" didn't "want their businesses and things tied," they could give money to JENKINS's relatives to make a

"donation" to JENKINS's campaign rather than doing so directly.

88.     On or about October 7, 2022, a $5,000 check from Yona Systems Group was deposited into Scott Jenkins for Sheriff's Financial Institution 2 account -133.  On or about January 9, 2023, Scott Jenkins for Sheriff filed a campaign finance report covering the period July 1, 2022 through December 31, 2022.  That report disclosed a $5,000 contribution from METCALF's company, Yona Systems Group, received on October 7, 2022.

89.     In or around September 2022, METCALF recruited Individual 3 to pay $5,000 to JENKINS in exchange for being appointed as an Auxiliary Deputy Sheriff.  On or about September 8, 2022, METCALF texted a photograph of Individual 3's driver's license to Individual 1 to begin that process.

*Bribery Involving Individual 2*

90.     Individual 2 is an associate of GUMBINNER.  In or around 2020 or 2021, GUMBINNER showed his Culpeper County Sheriff's Office badge to Individual 2, who expressed interest in acquiring one so that he could carry a concealed firearm outside of Virginia.  GUMBINNER subsequently introduced Individual 2 to Individual 1.  On or about September 9, 2022, GUMBINNER texted Individual 1, "Also [Individual 2] is in for supporting the Sheriff."

91.     In or around September and October 2022, Individual 1 and Individual 2 discussed Individual 2's desire to become an Auxiliary Deputy Sheriff in Culpeper.  Individual 1 informed him that he would have to make a $5,000 donation to JENKINS's campaign in exchange for being appointed as an Auxiliary Deputy Sheriff.

92.     On or about September 15, 2022, Individual 2 provided a photograph of his driver's

license to Individual 1, who provided it to Deputy 1 to begin the appointment process.

93.     On or about October 24, 2022, JENKINS signed an Appointment Order certifying that he had appointed Individual 2 as an Auxiliary Deputy Sheriff.  On or about October 26, 2022, Individual 2 traveled to Culpeper.  After Individual 2 took the oath of office, JENKINS, Individual 1, and Individual 2 met in a conference room at the Sheriff's Office.  JENKINS gave Individual 2 a Sheriff's Office badge and Individual 2 handed JENKINS a $5,000 check from Company 1, payable to Scott Jenkins for Sheriff.

94.     On or about November 2, 2022, a $5,000 check from Company 1 was deposited into Scott Jenkins for Sheriff's Financial Institution 2 account -133.  On or about January 9, 2023, Scott Jenkins for Sheriff filed a campaign finance report covering the period July 1, 2022 through December 31, 2022.  That report disclosed a $5,000 contribution from Individual 2's company, Company 1, received on November 2, 2022.

95.     On or about November 8, 2022, JENKINS and Individual 1 discussed the $5,000 payments that JENKINS had accepted from METCALF and Individual 2.  JENKINS stated, "We've had a couple, you know, the same numbers so far."  He asked Individual 1 to think of ways to vary the payment amounts: "I guess give it some thought to if there's a way to break them down or make them, you know, odd numbers, or whether it's half and half or, you know, if it's like 3 or 4.  Is there any way to, instead of like just – you know what I'm saying?"

*Bribery Involving Individual 3*

96.     On or about October 6, 2022, Individual 1 told JENKINS that three individuals whom METCALF had recruited, as well as UC-1 and UC-2, were ready to be sworn in. Individual 1 stated, "That's, that's worth about, with everybody we got lined up, that's worth about

fifty. So, um, I don't know if you want to get them in this quarter?" After additional discussion, JENKINS stated, "I would rather swear them in sooner, and anything that's coming in can just trickle in a week, two, three whatever after. So that I'd rather do my part first. And if I have deputies that want to support me, hey, that's great. You know, some do, some don't. And, but if it, I, I've thought on it. I've just thought on it with people, I'm like, well, hmm. So, if I do just, just, I just feel like if I'm going to get attacked or somebody's going to try to come after me or something for some reason, then it's harder to defend if it's okay, well, you know X, Y, and Z wrote these checks, and then later on – so, I think it's better if you do it the other way. If we get them, get them on board, or at least ready to go –" Individual 1 stated, "Sworn first, yeah." JENKINS continued, "And then, if a check is deposited you know, the week, two, three after, then it works, but it's just mixing it up."

97.     On or about November 8, 2022, Individual 1 texted a photograph of Individual 3's driver's license to Deputy 1.

98.     On or about November 30, 2022, JENKINS signed an Appointment Order certifying that he had appointed Individual 3 as an Auxiliary Deputy Sheriff. On or about December 29, 2022, Individual 3 traveled to Culpeper and was sworn in as an Auxiliary Deputy Sheriff. After he was sworn in, he met with JENKINS at the Sheriff's Office and handed JENKINS a white envelope containing $5,000 cash.

99.     Individual 3's $5,000 cash was not deposited into Scott Jenkins for Sheriff's Financial Institution 2 account -133. On or about December 31, 2022, JENKINS attended the Nation's Gun Show at the Dulles Expo Center in Chantilly, Virginia, and purchased a Wilson

pistol for $3,000, for which he paid using cash that he removed from a white envelope.

100.    On or about January 9, 2023, Scott Jenkins for Sheriff filed a campaign finance report covering the period July 1, 2022 through December 31, 2022.  That report did not disclose any contribution from Individual 3 or from any business associated with Individual 3.

*Bribery Involving UC-1 and UC-2*

101.    On or about October 25, 2022, Individual 1 sent UC-1's driver's license to Deputy 1.  On or about November 9, 2022, JENKINS signed an Appointment Order certifying that he had appointed UC-1 as an Auxiliary Deputy Sheriff.  On or about November 14, 2022, UC-1 traveled to Culpeper and was sworn in as an Auxiliary Deputy Sheriff.  After he was sworn in, UC-1 met with JENKINS at the Sheriff's Office.  JENKINS handed UC-1 a badge.  Immediately thereafter, UC-1 handed JENKINS an envelope containing $5,000 cash.

102.    After UC-1 left the Sheriff's Office, Individual 1 told JENKINS that UC-2 wanted to become an Auxiliary Deputy Sheriff, but that UC-2 had been convicted of a crime.  Individual 1 told JENKINS, "He'd be a big help.  He'd probably hit you a couple times before the thing." JENKINS instructed Individual 1 to text a photograph of his driver's license to JENKINS directly, rather than to Deputy 1, stating, "I'll just personally walk it through, take a look and we'll talk."

103.    On or about November 18, 2022, Individual 1 texted a photograph of UC-2's driver's license to JENKINS, as JENKINS had instructed.  On or about December 15, 2022, JENKINS informed Individual 1 that he had approved UC-2.  On or about December 27, 2022, JENKINS signed an Appointment Order certifying that he had appointed UC-2 as an Auxiliary Deputy Sheriff.  On or about December 28, 2022, UC-2 traveled to Culpeper and was sworn in as an Auxiliary Deputy Sheriff.  After being sworn in, UC-2 and Individual 1 returned to the Sheriff's

Office, where UC-2 received his badge from JENKINS and then handed JENKINS an envelope containing $10,000 cash.

104. Neither UC-1's $5,000 cash nor UC-2's $10,000 cash were deposited into Scott Jenkins for Sheriff's Financial Institution 2 account -133.

105. On or about January 9, 2023, Scott Jenkins for Sheriff filed a campaign finance report covering the period July 1, 2022 through December 31, 2022. It did not report any contribution from UC-1, UC-2, or from any business associated with those individuals.

*Bribery Involving Individual 4*

106. Individual 4 is an associate of Individual 2. In or around September 2022, Individual 2 told Individual 4 that he could help him obtain authority to carry a concealed weapon in all fifty states. On or about November 7, 2022, Individual 2 provided a photograph of Individual 4's driver's license to Individual 1. Individual 1 provided it to Deputy 1 on or about December 16, 2022.

107. On or about December 27, 2022, JENKINS signed an Appointment Order certifying that he had appointed Individual 4 as an Auxiliary Deputy Sheriff. On or about January 4, 2023, Individual 4 traveled to Culpeper, bringing with him a gift bag containing candy, a trinket, and $5,000 cash. JENKINS, Individual 1, Individual 2, and Individual 4 had lunch together. At the conclusion of the lunch, Individual 4 handed JENKINS the gift bag. Individual 1 addressed JENKINS: "So, I had asked him to take care of you after the... He put it in the bag. So you, you have cash from him in the bag. Thank you." Individual 4 stated, "I live and work overseas, and I know how to do these things." Individual 4 continued, "You do it so quietly [inaudible]." The group, including JENKINS, laughed. Individual 1 then stated, "Well, this is America. We gotta

24

do things hush, hush around here."  Individual 4 responded, "Well, yeah.  F***, you have to be really careful here."  After this conversation, Individual 4 was sworn in as an Auxiliary Deputy Sheriff.  After Individual 4 was sworn in, JENKINS gave him a Sheriff's Office badge.

108.    Individual 4's $5,000 cash was not deposited into Scott Jenkins for Sheriff's Financial Institution 2 account -133.  On or about January 4, 2023, JENKINS's Financial Institution 1 account -712 received a cash deposit in the amount of $7,000.

109.    On or about April 15, 2023, Scott Jenkins for Sheriff filed a campaign finance report covering the period January 1, 2023 to March 31, 2023.  That report did not disclose any contribution from Individual 4 or any business associated with Individual 4.

*JENKINS Attempts to Conceal Cash Bribes as Gun Purchases*

110.    On or about January 30, 2023, JENKINS contacted Individual 1 and asked him to meet in person.  JENKINS explained that his deadline to file his annual disclosure with the Virginia Conflict of Interest and Ethics Advisory Council was the following day.  JENKINS stated that, to avoid the obligation to report the cash he had received from Individual 3, Individual 4, UC-1, and UC-2, JENKINS wanted to characterize the money he had received from those individuals as payments for the purchase of firearms.  JENKINS gave Individual 1 four firearms and asked Individual 1 to deliver them to Individual 3, Individual 4, UC-1, and UC-2.  JENKINS instructed Individual 1 to inform those individuals that their payments to JENKINS had been for the purchase of those firearms, and to create false documentation reflecting those purported transactions.

111.    All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH FIVE
Honest Services Wire and Mail Fraud
(18 U.S.C. §§ 1341, 1343, 1346 & 2)

112.    Beginning no later than in or around April 2019 and continuing until in or around January 2023, in the Western District of Virginia and elsewhere, the defendants, SCOTT HOWARD JENKINS, RICK TARIQ RAHIM, FREDRIC GUMBINNER, and JAMES METCALF, Individual 1, Individual 2, Individual 3, and Individual 4, and others known and unknown, knowingly devised and intended to devise a scheme and artifice to defraud Culpeper County and its citizens by depriving them of their intangible right to the honest services of JENKINS through bribery.

### Scheme and Artifice to Defraud

113.    The scheme and artifice to defraud is more fully described in paragraphs 1 through 23 and 26 through 110 of this Indictment, and those paragraphs are realleged and incorporated by reference in Counts Two through Five of this Indictment as if fully set forth herein.

### Execution of the Scheme and Artifice to Defraud

114.    On or about the dates listed below, in the Western District of Virginia and elsewhere, the defendants listed below, for the purpose of executing the above-described scheme and artifice to defraud and deprive, did knowingly cause to be delivered by mail according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, the matters described below:

26

| Count | Defendants | Approximate Date | Description |
|-------|-----------|------------------|-------------|
| 2 | JENKINS and RAHIM | August 17, 2020 | Copy of Order Granting Request for Restoration of Firearms, In re: Rick Tariq Rahim, Case No. 19-L-1242, mailed by the Culpeper County Circuit Court Clerk's Office to the Virginia State Police |

115.    All in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

116.    On or about the dates listed below, in the Western District of Virginia and elsewhere, the defendants listed below, for the purpose of executing the above-described scheme and artifice to defraud and deprive, knowingly transmitted and caused to be transmitted by means of wire communications in interstate commerce the writings, signs, signals, pictures, and sounds described below, each such transmission constituting a separate count:

| Count | Defendants | Approximate Date | Description |
|-------|-----------|------------------|-------------|
| 3 | JENKINS and RAHIM | July 31, 2019 | Apple iMessage from Individual 1 to JENKINS stating, "Take your time. No hurry" causing query of data center located outside Virginia |

| Count | Defendants | Approximate Date | Description |
|---|---|---|---|
| 4 | JENKINS, RAHIM, and GUMBINNER | February 26, 2020 | Apple iMessage from Individual 1 to Deputy 2 stating, in relevant part, "Sheriff wants to fast track Fred. Told me to have him come mid week next week to get sworn. Wanted to pass on this so you had it," causing query of data center located outside Virginia |
| 5 | JENKINS and METCALF | October 7, 2022 | Deposit of Check No. 45898, in the amount of $5,000, drawn on Financial Institution 4 account No. -701, held in the name of Yona Systems Group, into Financial Institution 2 account No. -133, held in the name of Scott Jenkins for Sheriff, causing electronic transmission to third party processing company located outside Virginia |

117.    All in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

**COUNT SIX**
Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. § 666(a)(1)(B))

118.    Paragraphs 1 through 23 and 26 through 110 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

119.    From in or around July 2019 through in or around May 2021, in the Western District of Virginia and elsewhere, the defendant, SCOTT HOWARD JENKINS, being an agent of Culpeper County and the Culpeper County Sheriff's Office, a local government and an agency thereof both of which received benefits exceeding $10,000 under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance in the fiscal years ending June 30, 2020 and June 30, 2021, did corruptly solicit and demand for his own benefit and did accept and agree to accept things of value from RAHIM, that is, a check in

28

the amount of $17,500 and a cash bribe, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of Culpeper County and the Culpeper County Sheriff's Office involving something of value of $5,000 and more, that is, the appointment of RAHIM as an Auxiliary Deputy Sheriff and RAHIM's petition to restore his firearms rights.

120.    All in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT SEVEN
Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. § 666(a)(2))

121.    Paragraphs 1 through 23 and 26 through 110 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

122.    From in or around July 2019 through in or around May 2021, in the Western District of Virginia and elsewhere, the defendant, RICK TARIQ RAHIM, did corruptly give, offer, and agree to give a thing of value to JENKINS, that is, a check in the amount of $17,500 and a cash bribe, with intent to influence and reward JENKINS, an agent of Culpeper County and the Culpeper County Sheriff's Office, a local government and an agency thereof both of which received benefits exceeding $10,000 under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance in the fiscal years ending June 30, 2020 and June 30, 2021, in connection with any business, transaction and series of transactions of Culpeper County and the Culpeper County Sheriff's Office involving something of value of $5,000 and more, that is, the appointment of RAHIM as an Auxiliary Deputy Sheriff and RAHIM's petition to restore his firearms rights.

123.    All in violation of Title 18, United States Code, Section 666(a)(2).

## COUNT EIGHT
Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. § 666(a)(1)(B) & 2)

124.    Paragraphs 1 through 23 and 26 through 110 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

125.    From in or around April 2019 through in or around March 2020, in the Western District of Virginia and elsewhere, the defendant, SCOTT HOWARD JENKINS, being an agent of Culpeper County and the Culpeper County Sheriff's Office, a local government and an agency thereof both of which received benefits exceeding $10,000 under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance in the fiscal years ending June 30, 2019 and June 30, 2020, aided and abetted by the defendant, RICK TARIQ RAHIM, did corruptly solicit and demand for his own benefit and did accept and agree to accept things of value from GUMBINNER, that is, approximately $20,000, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of Culpeper County and the Culpeper County Sheriff's Office, involving something of value of $5,000 and more, that is, the appointment of GUMBINNER as an Auxiliary Deputy Sheriff.

126.    All in violation of Title 18, United States Code, Section 666(a)(1)(B) and 2.

## COUNT NINE
Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. §§ 666(a)(2) & 2)

127.    Paragraphs 1 through 23 and 26 through 110 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

128.    From in or around April 2019 through in or around March 2020, in the Western

30

District of Virginia and elsewhere, the defendant, FREDRIC GUMBINNER, aided and abetted by

the defendant, RICK TARIQ RAHIM, did corruptly give, offer, and agree to give a thing of value

to JENKINS, that is, approximately $20,000, with intent to influence and reward JENKINS, an

agent of Culpeper County and the Culpeper County Sheriff's Office, a local government and an

agency thereof both of which received benefits exceeding $10,000 under federal programs

involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal

assistance in the fiscal years ending June 30, 2019 and June 30, 2020, in connection with any

business, transaction and series of transactions of Culpeper County and the Culpeper County

Sheriff's Office involving something of value of $5,000 and more, that is, the appointment of

GUMBINNER as an Auxiliary Deputy Sheriff.

129.    All in violation of Title 18, United States Code, Section 666(a)(2) and 2.

**COUNT TEN**
Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. § 666(a)(1)(B))

130.    Paragraphs 1 through 23 and 26 through 110 of this Indictment are realleged and

incorporated by reference as though fully set forth herein.

131.    From in or around August 2022 through in or around September 2022, in the

Western District of Virginia and elsewhere, the defendant, SCOTT HOWARD JENKINS, being

an agent of Culpeper County and the Culpeper County Sheriff's Office, a local government and

an agency thereof both of which received benefits exceeding $10,000 under federal programs

involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal

assistance in the fiscal year ending June 30, 2023, did corruptly solicit and demand for his own

benefit and did accept and agree to accept things of value from METCALF, that is, a check in the amount of $5,000, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of Culpeper County and the Culpeper County Sheriff's Office involving something of value of $5,000 and more, that is, the appointment of METCALF as an Auxiliary Deputy Sheriff.

132.    All in violation of Title 18, United States Code, Section 666(a)(1)(B).

### COUNT ELEVEN
Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. § 666(a)(2))

133.    Paragraphs 1 through 23 and 26 through 110 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

134.    From in or around August 2022 through in or around September 2022, in the Western District of Virginia and elsewhere, the defendant, JAMES METCALF, did corruptly give, offer, and agree to give a thing of value to JENKINS, that is, a check in the amount of $5,000, with intent to influence and reward JENKINS, an agent of Culpeper County and the Culpeper County Sheriff's Office, a local government and an agency thereof both of which received benefits exceeding $10,000 under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance in the fiscal year ending June 30, 2023, in connection with any business, transaction and series of transactions of Culpeper County and the Culpeper County Sheriff's Office involving something of value of $5,000 and more, that is, the appointment of METCALF as an Auxiliary Deputy Sheriff.

135.    All in violation of Title 18, United States Code, Section 666(a)(2).

## COUNT TWELVE
Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. § 666(a)(1)(B) & 2)

136.    Paragraphs 1 through 23 and 26 through 110 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

137.    From in or around September 2022 through in or around October 2022, in the Western District of Virginia and elsewhere, the defendant, SCOTT HOWARD JENKINS, being an agent of Culpeper County and the Culpeper County Sheriff's Office, a local government and an agency thereof both of which received benefits exceeding $10,000 under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance in the fiscal year ending June 30, 2023, aided and abetted by the defendant, FREDRIC GUMBINNER, did corruptly solicit and demand for his own benefit and did accept and agree to accept things of value from Individual 2, that is, a check in the amount of $5,000, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of Culpeper County and the Culpeper County Sheriff's Office involving something of value of $5,000 and more, that is, the appointment of Individual 2 as an Auxiliary Deputy Sheriff.

138.    All in violation of Title 18, United States Code, Section 666(a)(1)(B) and 2.

## COUNT THIRTEEN
Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. § 666(a)(1)(B))

139.    Paragraphs 1 through 23 and 26 through 110 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

140.    From in or around October 2022 through in or around November 2022, in the

33

Western District of Virginia and elsewhere, the defendant, SCOTT HOWARD JENKINS, being an agent of Culpeper County and the Culpeper County Sheriff's Office, a local government and an agency thereof both of which received benefits exceeding $10,000 under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance in the fiscal year ending June 30, 2023, did corruptly solicit and demand for his own benefit and did accept and agree to accept things of value from UC-1, that is, approximately $5,000, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of Culpeper County and the Culpeper County Sheriff's Office involving something of value of $5,000 and more, that is, the appointment of UC-1 as an Auxiliary Deputy Sheriff.

141.    All in violation of Title 18, United States Code, Section 666(a)(1)(B).

**COUNT FOURTEEN**
Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. § 666(a)(1)(B))

142.    Paragraphs 1 through 23 and 26 through 110 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

143.    From in or around November 2022 through in or around December 2022, in the Western District of Virginia and elsewhere, the defendant, SCOTT HOWARD JENKINS, being an agent of Culpeper County and the Culpeper County Sheriff's Office, a local government and an agency thereof both of which received benefits exceeding $10,000 under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance in the fiscal year ending June 30, 2023, did corruptly solicit and demand for his own

34

benefit and did accept and agree to accept things of value from UC-2, that is, approximately $10,000, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of Culpeper County and the Culpeper County Sheriff's Office involving something of value of $5,000 and more, that is, the appointment of UC-2 as an Auxiliary Deputy Sheriff.

144.    All in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT FIFTEEN
Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. § 666(a)(1)(B) & 2)

145.    Paragraphs 1 through 23 and 26 through 110 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

146.    From in or around September 2022 through in or around December 2022, in the Western District of Virginia and elsewhere, the defendant, SCOTT HOWARD JENKINS, being an agent of Culpeper County and the Culpeper County Sheriff's Office, a local government and an agency thereof both of which received benefits exceeding $10,000 under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance in the fiscal year ending June 30, 2023, aided and abetted by the defendant, JAMES METCALF, did corruptly solicit and demand for his own benefit and did accept and agree to accept things of value from Individual 3, that is, approximately $5,000, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of Culpeper County and the Culpeper County Sheriff's Office involving something of value of $5,000 and more, that is, the appointment of Individual 3 as an Auxiliary Deputy Sheriff.

35

147.    All in violation of Title 18, United States Code, Section 666(a)(1)(B) and 2.

## **COUNT SIXTEEN**
Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. § 666(a)(1)(B))

148.    Paragraphs 1 through 23 and 26 through 110 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

149.    From in or around September 2022 through in or around January 2023, in the Western District of Virginia and elsewhere, the defendant, SCOTT HOWARD JENKINS, being an agent of Culpeper County and the Culpeper County Sheriff's Office, a local government and an agency thereof both of which received benefits exceeding $10,000 under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance in the fiscal year ending June 30, 2023, did corruptly solicit and demand for his own benefit and did accept and agree to accept things of value from Individual 4, that is, approximately $5,000, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of Culpeper County and the Culpeper County Sheriff's Office involving something of value of $5,000 and more, that is, the appointment of Individual 4 as an Auxiliary Deputy Sheriff.

150.    All in violation of Title 18, United States Code, Section 666(a)(1)(B).

## **NOTICE OF FORFEITURE**
(28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C))

151.    Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to Defendants JENKINS, RAHIM, GUMBINNER, and METCALF that in the event of their conviction of any of the

offenses charged in Counts One through Sixteen of this Indictment, all property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from such offense, is subject to forfeiture.

152.    Defendants JENKINS, RAHIM, GUMBINNER, and METCALF are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

153.    Defendants JENKINS, RAHIM, GUMBINNER, and METCALF are notified that in the event that property subject to forfeiture, as a result of any act or omission of a defendant,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendant up to the total value of the property subject to forfeiture pursuant to Title 21, United States Code, Section 853(p), as incorporated by reference in Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

37

A TRUE BILL this 28th day of June, 2023.

s/FOREPERSON
FOREPERSON

CHRISTOPHER R. KAVANAUGH
UNITED STATES ATTORNEY

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S. Department of Justice

38