Case 3:23-cr-00011-RSB-JCH  Document 233  Filed 11/14/24  Page 1 of 20
Pageid#: 1024
1
USA v. Jenkins, 3:23-cr-11, 11/13/2024

```
                UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF VIRGINIA
                     CHARLOTTESVILLE DIVISION

*****************************************************************

UNITED STATES OF AMERICA,     CRIMINAL CASE NO.:  3:23-CR-11
                              NOVEMBER 13, 2024, 11:00 A.M.
                              CHARLOTTESVILLE, VIRGINIA
          Plaintiff,          STATUS CONFERENCE
vs.

SCOTT HOWARD JENKINS,         Before:
                              HONORABLE ROBERT S. BALLOU
                              UNITED STATES DISTRICT JUDGE
          Defendant.          WESTERN DISTRICT OF VIRGINIA

*****************************************************************

APPEARANCES:

For the Government:      CELIA RUTH CHOY, ESQUIRE
                         LINA PENG, ESQUIRE
                         DOJ-Crm
                         Public Integrity Section
                         1301 New York Avenue NW, 10th Floor
                         Washington, DC 20530
                         202-875-1557

                         MELANIE SMITH, ESQUIRE
                         DOJ-USAO
                         Western District of Virginia
                         255 West Main Street, Suite 130
                         Charlottesville, VA 22902
                         434-293-4283



Court Reporter:  Lisa M. Blair, RPR, RMR, CRR, FOCR
                 255 West Main Street, Suite 304
                 Charlottesville, Virginia  22902
                 434.296.9284

       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER.
```

1  APPEARANCES CONTINUED:

2  For the Defendant:         PHILIP ANDONIAN, ESQUIRE
                              JOSEPH P. CALEB, ESQUIRE
3                             Caleb Andonian PLLC
                              1100 H Street, NW, Suite 315
4                             Washington, DC 20005
                              202-953-9850

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  (Proceedings commenced, 11:00 a.m.)

2              THE COURT:  Let's call our case, please.

3              THE CLERK:  *United States of America versus Scott*

4  *Howard Jenkins,* Case Number 3:23-cr-11.

5              THE COURT:  Let the record reflect the government is

6  present by its counsel.  It does not appear the defendant is

7  present, but counsel is present.

8              All right.  So where is Mr. Jenkins?

9              MR. ANDONIAN:  Your Honor, thank you.  Our

10 understanding was he was excused from the proceedings.  I can

11 further represent that Mr. Jenkins is on his way back to the

12 emergency room right now.  I just got a text message from him a

13 moment ago, pursuant to his doctor's orders.

14             THE COURT:  All right.  So where are we now?

15             MR. ANDONIAN:  Yes, Your Honor, we --

16             THE COURT:  So let me just make the record clear.  I

17 received -- and I'm going to file under seal -- Ms. Brown, did

18 you get the email from Mr. Andonian?

19             I'll file under seal the medical records that we've

20 gotten.

21             MR. ANDONIAN:  Very well, Your Honor.  Thank you.

22             So we did submit the records.  Your Honor, I think at

23 this time we don't really -- in our view, we are compelled to

24 ask for a continuance of this matter.  Mr. Jenkins is still

25 under an acute medical condition at this moment.  I mean, the

1  Court read the records.  I mean, his primary care doctor is not

2  recommending that he resume trial until he is --

3              THE COURT:  Well, it's kind of -- he is -- I'll pull

4  it up here.

5              He's not real forceful.  He simply says -- he says, I

6  would recommend -- he said, I'd like to get his condition

7  stable before I would recommend resuming or starting the trial.

8              But that's not our standard, right?  I mean, our

9  standard has to be -- and the Fourth Circuit has made clear --

10 that, you know, the medical repercussions must be serious and

11 out of the ordinary.  Now, in both the *Brown* and *Cole* case I

12 recognize that the jury was already impaneled; jeopardy had

13 already attached.  And so the Court is in a little bit of a

14 different position than we are presently where jeopardy hasn't

15 attached.

16             MR. ANDONIAN:  Correct.

17             THE COURT:  But the impending -- you know, going

18 forward, Brown says the impending trial must pose a substantial

19 danger to the defendant's life or health, right?

20             And he had an anxiety attack, and that's what the

21 records make clear.

22             MR. ANDONIAN:  Your Honor, I guess our concern is

23 that -- and I understand he was in communication with pretrial

24 services, as well, with his blood pressure.  His reading -- we

25 received text communications between Mr. Jenkins and the

1  pretrial services officer.  I mean, his blood pressure -- I'm
2  not purporting to be a doctor, but it looks like it's in the
3  acute hypertensive crisis range given where it was.  And so my
4  understanding, though, is that the treatment going forward that
5  his doctor is prescribing and recommending includes medication
6  that he was not previously taking that would bring that back
7  down.  But as of right now, whatever is --
8           THE COURT:  We're not going to start our trial until
9  tomorrow.  He's going to be on medication, then, for almost 48
10 hours to start the trial.  And so why should I continue the
11 trial now if -- I mean, he's going to be on medication for 48
12 hours.  And blood pressure medication typically is fairly
13 responsive once you get it on there.  And his blood pressure
14 last night wasn't in the same range where it was this morning.
15 Blood pressure typically rises in the morning.  That's the way
16 our Circadian rhythms work, and we're going to wake up with a
17 higher blood pressure typically than we're going to go to bed
18 with.
19          So why shouldn't -- why should I make the decision
20 now to continue the case?
21          MR. ANDONIAN:  I mean, Your Honor, I guess let me
22 answer that in a couple of ways.  I want to circle back to the
23 *Brown* and *Cole* decisions.  I mean, you know, those cases are
24 appellate cases looking backward at whether or not the court
25 abused its discretion in denying what in both cases was, you

1  know, multiple -- you know, a continuance request following
2  multiple continuances that were granted after evidentiary
3  hearings that were held, or at least that were provided as an
4  opportunity for the defense to provide the Court with more
5  information in the case of *Cole*.
6           At this stage of things, I mean, Your Honor has
7  discretion to grant a continuance for any number of reasons,
8  not the least of which is in the interest of justice.  And
9  we're providing a basis right now for not impaneling a jury.  I
10 mean, Mr. Jenkins is back on his way to the emergency room this
11 morning.  If we get a jury, we pick a jury, we impanel a jury
12 and this happens again, we're talking about now being in a
13 position where we have a jury that's seated and we're looking
14 at another day of potential delay.  I'm just throwing out
15 scenarios here.  Now we're bumping up into the window that
16 we've been discussing in terms of availability and being able
17 to get the trial done.
18          I am simply proposing that given the current state of
19 affairs and what my understanding -- and I'm looking at nothing
20 more than what the Court and government counsel are looking at
21 in the medical records -- but a doctor saying he would like to
22 allow stabilization.  He wants to see him again in two weeks.
23 I don't think it's an unreasonable request, given where we are
24 in the proceedings, to allow that course of medical treatment
25 to happen and to see where things are.

1         THE COURT:  But if he is -- if he's put on blood
2   pressure medication and his blood pressure medication then
3   becomes effective, and tomorrow morning we're able to pick a
4   jury and go because he's now on blood pressure medication --
5   this is a stressful event.  I mean, that stress is not going to
6   change, whether we confront it in November of 2024, January of
7   2025, or some other time in the future.  The stress is the same
8   any time anyone sits as a defendant in a federal criminal
9   trial.  It's a stressful event.  There is no doubt about it.
10  And if we can pick and jury and go because he's now on
11  medication, why not do that?
12        MR. ANDONIAN:  I think because his doctor -- and this
13  is the only information we now have in the record, is a note in
14  his file from his treating physician who is saying that he
15  would recommend allowing Mr. Jenkins to stabilize over a
16  two-week period so he can reevaluate him and figure out what,
17  if anything, needs to be done at that time.  And there is a
18  course of treatment that has been prescribed that is happening
19  now.  I mean, I presume if the doctor believed that a 48-hour
20  window was enough to tell whether or not he was going to be
21  stable from whatever is going on, that he would have said
22  something to that effect.  But he specifically wants to see him
23  at the latest in two weeks, and I think he said earlier if the
24  need arises.  That's the medical information that's before the
25  Court right now, and that's the medical information that we're

Case 3:23-cr-00011-RSB-JCH    Document 233    Filed 11/14/24    Page 8 of 20
Pageid#: 1031
8
USA v. Jenkins, 3:23-cr-11, 11/13/2024

1  operating under.  And I don't -- there is nothing that has been
2  put in the record to rebut or undermine or give the Court a
3  reason to rebut or undermine his treating physician's
4  recommendation.  However it's been worded, however forceful or
5  not it's been stated, it's a treating physician's statement in
6  medical records that are in evidence before the Court
7  recommending a certain course of treatment.  And we're at a
8  stage right now where we don't have to start wringing our hands
9  wondering whether or not we've impaneled the jury and are going
10 to have to deal with an acute issue that comes up that perhaps
11 could have been avoided if we allowed Mr. Jenkins to undergo
12 the recommended course of treatment from his doctor, and then
13 make a decision what we want to do at that point.
14              THE COURT:  Okay.  All right.  Thank you very much.
15              MR. ANDONIAN:  Thank you, Your Honor.
16              THE COURT:  Ms. Peng, good morning.
17              MS. PENG:  Good morning.
18              The government opposes the continuance.  And I think,
19 based on the record we have here today, Your Honor has all the
20 information it needs to deny that motion.
21              THE COURT:  And I guess here's the dilemma that we
22 have, right?  It seems to me we're faced with two different
23 choices.  I think to be able to get the trial done by the end
24 of next week with the anticipated evidence, our window closes
25 tomorrow is what I'm understanding from you all.  And so, if

Case 3:23-cr-00011-RSB-JCH    Document 233    Filed 11/14/24    Page 9 of 20
Pageid#: 1032
9
USA v. Jenkins, 3:23-cr-11, 11/13/2024

1  we -- if we go forward and bring a jury in and we're not able
2  to seat it, then we're going to be continuing the trial.  If we
3  go forward and we seat the jury and then we wind up with a
4  medical emergency, then we're pushed into other times when we
5  have to figure out schedules at that point in time, either the
6  week of Thanksgiving or I change everything that I've got the
7  week after Thanksgiving and we go then; or -- I think I looked
8  at my calendar yesterday, and I mentioned to you all the week
9  before and the week of Martin Luther King day, I forget exactly
10 what those dates are -- I know I've got a civil trial up here.
11 That can be moved.  So I know there's a courtroom during that
12 time.
13         So those are kind of our three options.  And the
14 question is whether -- and I'm inclined to agree with you,
15 Ms. Peng, that we cross this bridge tomorrow morning.  But I'm
16 just thinking out loud that what do we do if he remains
17 unstable this time tomorrow, because the one thing we do want
18 to avoid is an interruption in the middle of the trial once
19 jeopardy is attached, because then that creates all kinds of
20 complications.
21         MS. PENG:  So I think Your Honor is correct that the
22 record supports a condition that can be easily corrected by
23 medication.  And what we have on the record -- and I just want
24 to complete the record today -- is that he was taken to the
25 emergency room by his wife, not by ambulance, to a hospital

Case 3:23-cr-00011-RSB-JCH    Document 233    Filed 11/14/24    Page 10 of 20    10
Pageid#: 1033
USA v. Jenkins, 3:23-cr-11, 11/13/2024

1 that was at least 30 minutes away; nobody observed the brief
2 episode, as we now know from the records, except him and he was
3 conscious when he got to the hospital; and the emergency
4 records also reflect that, you know, they reminded him that he
5 was only to report if it was an emergency, and he was released
6 by 9:50 in the morning.
7            And the condition that Mr. Jenkins now claims is
8 precluding him from coming to court is a chronic condition that
9 has been documented in his pre-bail report.  He has had his
10 high blood pressure medication that's been controlled for a
11 number of years.  And, in fact, when Mr. Jenkins was arrested
12 in this case back in June of 2023, he reported stroke-level
13 blood pressure, the precise words that counsel has represented
14 to the Court that he is experiencing at this moment; and that,
15 in fact, he had -- at the time of his arrest -- had these
16 stroke-level blood pressure symptoms in, quote, "recent
17 months."  And we have a video clip documenting that statement
18 by Mr. Jenkins back in June of 2023 that we can play for the
19 Court if the Court would like to listen to that.
20            And the point of that is, you know, to your point,
21 this is not a condition that is going to go away.  And it's a
22 condition that's been controlled by medication for a number of
23 years up until this point.  And in fact, I think even in that
24 video clip Mr. Jenkins himself says that if he takes the
25 medication that he already had, his blood pressure would come

1 down within 30 minutes.

2     And so in the government's view if, in fact, that
3 occurs again during the course of the trial, then he would take
4 his medication, we could have medical personnel on standby, if
5 need be.  But continuing the trial at this juncture is not
6 going to solve what is a chronic condition that Mr. Jenkins
7 has.

8     I mean, to circle back, there's a reason why cases
9 like *Brown* set such a high standard for what the defendant
10 burden has to be to establish a substantial danger.  And the
11 doctor's note in terms of a, quote, "recommendation" that he
12 not come to court does not meet that standard.  And I note Your
13 Honor has read the cases.  In *Brown* in particular, the
14 defendant there had high blood pressure; and, in fact, the
15 defendant there had a number of small strokes.  And then the
16 court still found -- the Fourth Circuit -- that that was not
17 sufficient to meet the substantial danger standard.

18     Mr. Jenkins did not have a stroke.  He did not have a
19 heart attack.  He was conscious for all of the day yesterday.
20 In fact --

21     THE COURT:  Right.  In *Brown*, really the focus was
22 then on whether, if I remember correctly, that defendant could
23 then recall and be able to testify and participate in his
24 defense.

25     MS. PENG:  Right.  And there is no indication that

Case 3:23-cr-00011-RSB-JCH    Document 233    Filed 11/14/24    Page 12 of 20
Pageid#: 1035
12
USA v. Jenkins, 3:23-cr-11, 11/13/2024

1  Mr. Jenkins here has an inability to communicate, that he has
2  any kind of mental -- a diminishment of his mental capacities.
3  And I think it's worth pointing out that the other cases that
4  have considered this issue have looked at much more severe
5  symptoms.
6              In fact, I would point the Court to a 2022 case out
7  of the Northern District of California, *Nickolopoulous*, where
8  there the Court had two doctors' notes for that particular
9  defendant saying that they needed to avoid stress due to risk
10 of sudden cardiac attack or death.  And the Court found that
11 that was not sufficient, despite the opinions of two physicians
12 in that case, because the opinion has to be specifically tied
13 to the stress that trial brings, and that proceeding to trial
14 has to cause that substantial danger.
15             And then *Powell* was a case from Colorado in 2012
16 where the defendant there had prostate cancer, had surgery
17 scheduled for his back, and was on high doses of narcotics,
18 including fentanyl.  And even there, the court found that that
19 was not sufficient to meet the danger standard.
20             And then finally I'll point the Court to *Goodwin*,
21 which is a Tenth Circuit case from 1972 where defendant was
22 ordered out of his hospital bed in order to attend trial,
23 despite the recommendations and affidavits of physicians to the
24 contrary because the defendant was able to still converse with
25 his attorneys and was able to move around.

1             And so what we have on the record here is nowhere

2  near the conditions that other courts have found to be

3  sufficient to meet the defendant's burden of showing

4  substantial danger.

5             And again, I think the reason why that standard is so

6  high is because the disruption to the administration of justice

7  and to -- the prejudice to the government, to its witnesses,

8  and to the right of the public to continue with this trial is

9  strong, that the defendant must come forth with evidence

10 showing that it would be a substantial danger to their life or

11 health.

12            And I think in addition to the records we have in

13 terms of Mr. Jenkins' pre-existing medical condition, the

14 government would like to point out that the timing of what

15 occurred yesterday leads the government to believe that this

16 could be part of a delay tactic on the part of Mr. Jenkins.

17 And we say that not lightly, including because throughout the

18 course of this case there has been other indications that

19 Mr. Jenkins has wanted to delay proceeding this matter to

20 trial, including this was a long period of delay when he was

21 trying to obtain an attorney for the first three months of this

22 case that the case was delayed.  That included five hearings

23 that had to be held while he looked for an attorney.  There was

24 a substantial delay in July when this trial was supposed to go

25 forward originally that the government --

Case 3:23-cr-00011-RSB-JCH    Document 233    Filed 11/14/24    Page 14 of 20
                           Pageid#: 1037                                    14
USA v. Jenkins, 3:23-cr-11, 11/13/2024

1             THE COURT:  There was a production there.  While the

2    government objected, it also understood why the defendants

3    needed -- the defendant needed the additional time.

4             MS. PENG:  That's true.

5             And then I think, you know, more recently, yesterday

6    I think the Court and the government and defense counsel were

7    on the same page that we needed those medical records as soon

8    as possible.  And as the Court saw this morning, it was the

9    government that first produced the record that I think was

10   eventually provided to probation this morning at about 9:30.

11   It was only after that, that the records came through.  And

12   what those records show is that Mr. Jenkins was discharged from

13   the ER -- or not even admitted, actually -- as of 9:50

14   yesterday morning, and he was given those discharge records by

15   that time.  There is no indications in the records that, you

16   know, he was not conscious, that he didn't have access to his

17   attorneys via phone, email, what have you.  So the government

18   is perplexed as to why it took, you know, 24 hours almost for

19   any records to come through so that we could adjudicate this

20   matter in a timely fashion, except for, of course, the jury was

21   called in yesterday.  And then, you know, yesterday we're not

22   calling them in until tomorrow.

23            You know, it's concerning to the government also that

24   defense counsel yesterday reported absolutely no contact with

25   the defendant himself.  Now that we have the records -- again,

1  with no indication that he ever lost the ability to communicate

2  consciousness, what have you -- it's concerning to the

3  government that there was no contact with the defendant for all

4  of yesterday, and the contact was reportedly through his wife.

5          And, you know, I'd like to just end by saying that

6  the government is ready to proceed to trial.  The jury is

7  coming in.  We've already spent a lot of time working through

8  the venire.  And, to quote Judge Moon as he previously denied

9  the last continuance in this case, malfeasance by a public

10 official is an important matter, and the public has a strong

11 interest in seeing the case resolved.

12         So on that, we defer to the Court on whether you

13 would grant this continuance.  Thanks.

14         THE COURT:  Thank you, Ms. Peng.

15         MR. ANDONIAN:  Your Honor, may I just say one --

16         THE COURT:  Yes, sir.

17         MR. ANDONIAN:  -- brief word in conclusion to that.

18         I take offense and would strongly object to

19 Ms. Peng's suggestion that this is a delay tactic or that we in

20 any way have been trying to keep information from the Court and

21 the government.  We sent the medical records --

22         THE COURT:  And I don't think it was a suggestion

23 that counsel was doing that.

24         MR. ANDONIAN:  Well, I heard it slightly differently,

25 but I just want to make the record clear.  We sent the medical

Case 3:23-cr-00011-RSB-JCH    Document 233    Filed 11/14/24    Page 16 of 20
Pageid#: 1039
16
USA v. Jenkins, 3:23-cr-11, 11/13/2024

1  records from Mr. Jenkins' treating physician as soon as we got
2  them this morning.  I don't know that requiring his doctor's
3  staff to stay awake last night and get records out the door,
4  rather than first thing when they opened, is necessarily a
5  reasonable expectation the government has.
6       But the last thing -- I just want to come back to
7  where we are, Your Honor, which is the record evidence in this
8  matter as to Mr. Jenkins' health is a recommendation from his
9  treating physician that he undergo a course of treatment --
10 whatever he's been doing before and however chronic the
11 underlying issue might be, there is obviously a stressor that
12 has been added with the trial.  There is obviously a connection
13 and a nexus between the stress of the trial that has taken a
14 chronic condition and made it acute in this moment.  And there
15 is a recommendation from a physician that is in the record now
16 that is unrebutted and unimpeached, other than with Ms. Peng's
17 opinion that his evaluation is insufficient, that he undergo
18 another course of treatment for a two-week period to see if it
19 stabilizes.  And we don't think it's unreasonable under the
20 circumstances at all for the Court to exercise its discretion
21 in finding that is a justifiable reason to continue a matter
22 before we have impaneled the jury and before jeopardy is
23 attached.
24      And the final thing I just want to note is I have
25 concerns that I've raised as to whether or not Mr. Jenkins'

1  participation in the proceedings would be full and robust.  The
2  stress of worrying about an acute manifestation of blood
3  pressure to the point of crisis level is not going to help him
4  focus.  It is not going to help him pay attention.  It's not
5  going to necessarily put him in a position to work with us
6  effectively if he decides to testify, among other reasons.
7           So I do want to note my concern about that on the
8  record.  But I think more importantly, we have in the record a
9  doctor's recommendation that a different course of treatment
10 happen for a period of weeks, after which point he can evaluate
11 Mr. Jenkins.  And there is no basis to discredit that.  And
12 that, we believe, is more than enough for the Court to exercise
13 its discretion in granting a continuance.
14          THE COURT:  All right.  Thank you very much.
15          All right.  So at this time I'm going to deny the
16 request to continue.  We had a day, and it's my intent to start
17 impaneling a jury tomorrow morning.  This is an organic
18 situation and organic things change.
19          *Brown* and *Cole* make clear that the medical
20 repercussions of a condition must be serious and out of the
21 ordinary.  And I recognize that a hypertensive event is
22 serious, but it's not out of the ordinary and it can be managed
23 by way of medication.  And the impending trial must pose a
24 substantial danger to the defendant's life or death, and that's
25 not what is being conveyed to us through the medical records

1 that are there at this time.
2         I'm going to deny the motion to continue.  If there
3 is -- we'll start impaneling the jury at 9 tomorrow.  If we
4 need to do anything, if we need to address anything else, I'll
5 be here at 8:30 tomorrow.  The building I'm told is going to
6 open as early as 8 tomorrow so we can get the jury in and we
7 can get the lawyers in without having to worry about being late
8 as well.
9         And if anything changes during the course of the day,
10 I know that you all will be in touch with each other and be in
11 touch with me.  But here's what I would need.  And you can only
12 represent what you get, and I recognize that from the defense
13 standpoint, especially when it is an evolving situation, but
14 the current medical records and/or a physician that is here as
15 well.
16         This case has been pending.  And based upon what is
17 in the medical records at this time, his condition is one that
18 is subject to medication management.  And we will have -- all
19 of our people here are trained -- marshals, CSOs alike.  And so
20 I think we can manage any situation and we can be able to get
21 this case tried over the course of the next two weeks.  And
22 we'll manage the schedule to be able to get that done.
23         So with that, I'm going to deny the motion without
24 prejudice if anything else changes between now and then as
25 well.

1          Otherwise, Ms. Peng, on behalf of the government, is
2  there anything else we need to address today?
3          MS. PENG:  Not today, Your Honor.  Thank you.
4          THE COURT:  Mr. Caleb, Mr. Andonian, anything else we
5  need to address today?
6          MR. ANDONIAN:  Nothing else for today, Your Honor.
7          THE COURT:  I'll be here the rest of the day.  I've
8  got a hearing at 12, but otherwise I'll be here if we need to
9  address anything else.
10         We'll stand in recess.  Thank you.
11 (Proceedings adjourned, 11:26 a.m.)

C E R T I F I C A T E

I, Lisa M. Blair, RMR/CRR, Official Court Reporter for the United States District Court for the Western District of Virginia, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a correct transcript of the proceedings reported by me using the stenotype reporting method in conjunction with computer-aided transcription, and that same is a true and correct transcript to the best of my ability and understanding.

I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.

/s/ Lisa M. Blair                    Date: November 14, 2024